UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| TANNA MARIA SHEPHERD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Docket No.: 2:19-cv-00019 |
| | ) | |
| GARY NICHOLAS GILLILAN, | ) | |
| individually, STEVE HOPPER, in his | ) | |
| official capacity, and SMITH COUNTY | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

On one of the thinnest records the Court has ever seen, Defendants have filed a Motion for Summary Judgment (Doc. No. 26) on Tanna Maria Shepherd's claim that Smith County Deputy Sheriff Gary Nicholas Gillian used excessive force when he arrested her for assault on February 22, 2017. This is largely due to there being just three witnesses to the events leading up to the arrest, only two of whom have submitted declarations. Because those declarations comprise the bulk of the evidence before the Court and they present the quintessential and literal "he said – she said" dispute, summary judgment will be denied on Shepherd's excessive force claim. Summary judgment will be granted, however, to the extent Shepherd brings claims against Smith County, Tennessee, and its Sheriff, Steve Hopper.

## I. Background

On February 21, 2017, two unnamed Smith County, Tennessee deputies went to Shepherd's home in an effort to serve an arrest warrant on her daughter, Victoria, who lived at the residence.

1

Shepherd told the deputies her daughter was not there, but allowed them to come inside and have a look for themselves. Not finding Victoria in the home, the deputies left.

At around 10:30 p.m. the following night, Gillilan and Willie Robles, another Smith County Deputy, went to Shepherd's house on yet another effort to serve the arrest warrant on Victoria. Upon arrival, the officers noticed that Victoria's car was parked in the driveway. Therefore, Gillian went to the back of the house to insure no one fled from the residence, while Robles went to the front door. A short time later, Gillian claims that he heard yelling coming from the front of the house, and so he headed there to investigate.

At this point, the parties' view of the facts diverge dramatically. According to Gillilan, he tried to "de-escalate the situation by explaining why we were there," but Shepherd continued to "yell and curse[.]" (Doc. No. 28-1, Gillilan Dep. ¶ 3). The following then occurred:

> 4. While I was still asking questions concerning the whereabouts of Victoria, Shepherd suddenly turned and began walking very quickly back into the residence as I followed her and called for her to stop. Given that Victoria's vehicle was in the driveway at the time that Ms. Shepherd attempted to flee back into the residence, I was still trying to assess whether Victoria was home and to gain additional information as to her whereabouts, and/or when she might be home. In the moments that Ms. Shepherd fled, I was actually asking questions and was confused as to Ms. Shepherd's behavior. As I ordered her to stop, I was not certain as to whether she was lying as to Victoria's whereabouts, in danger from someone inside the residence, or just attempting to get away from further questions. I followed 3-4 feet as she ignored me and began to slam her front door shut in my face. In the process, Ms. Shepherd's door accidentally struck my foot. Ms. Shepherd then became angry and rushed back out of her home onto the porch and shoved me in the middle of my chest, exhibiting a threat. I did not know whether Ms. Shepherd intended to strike me again. At no time prior to Ms. Shepherd shoving me did I touch her. At no time, did I kick Ms. Shepherd's door, but the door did strike the tip of my boot. Nor did I reach into her residence and jerk her out of the front door.
>
> 5. Pursuant to my law enforcement training, I took her extended arm from my chest, turned her body so that she faced away from me, and put her against the outside wall of her residence to place her in handcuffs. Ms. Shepherd continued to curse and yell,

2

as I handcuffed her. The encounter from the time Ms. Shepherd fled until I handcuffed her was less than approximately 10-15 seconds.

(Id. ¶¶ 4-5).

According to Shepherd's version of events, however, she repeatedly told the officers that Victoria was not there, and that the reason Victoria's car was in the driveway was because it had mechanical problems. She also told them that her grandson was inside the home sleeping and that the officers could not come in. The following then allegedly occurred:

> 5. I started to walk back into my house. Deputy Gillilan tried to follow behind me, and I tried to close my door. At this point, the door hit the tip of his shoe, and he begin to forcefully kick my door. I put my hand out in a defensive manner as he was in my doorway, kicking it open and moving toward me. At that point, Deputy Gillilan ran into my hand that I had out in front to protect myself.
>
> 6. He grabbed me by my outstretched arm and jerked me back through my front door and out onto the porch twisting my arms behind me and throwing me up against the exterior wall of my front porch and handcuffed me. I suffered abrasions of my forearms and injured my shoulder as a result of the manner in which he jerked me out my door, twisted my arms and slammed me up against the wall.

(Doc. No. 34-3, Sheherd Decl. ¶¶ 5-6). Shepherd was arrested for assault, but those charges were later dismissed. Shepherd claims that, as a result of the scuffle, she was injured and her daughter took her to the emergency room for treatment after Shepherd was released from jail a few hours later. (Id. ¶ 7).

Apart from the two declarations referenced above, there is little other evidence presented to the Court in support of, or opposition to, the Motion for Summary Judgment. Defendants have submitted a DVD from the dash cam of the police cruiser, but that DVD is of no real assistance because it is only an audio recording, and the dash cam was not activated until after the physical altercation between Gillilan and Shepherd had ended. All it really shows is that both Shepherd and Gillilan sounded angry.

Defendants have also filed four pages from Shepherd's deposition, none of which are helpful. Those pages begin with Shepherd's interaction with other police officers the night before, and end when Gillilan went from the back to the front porch, which was before the alleged excessive force occurred.

For her part, Shepherd, too, has filed some excerpts from her deposition that confirm what she says in her declaration, and also indicates that her wounds were such that her shirt became bloodied, and that photographs of her injuries were taken. Those picture apparently have been misplaced, however. She has also attached excerpts from a transcript of the state court proceedings where the assault charge was dropped, but that evidence does shed any real light on whose version is correct, either.

Conspicuously absent from the record is any testimony or evidence from Deputy Robles, the other officer on the scene who likely could confirm either Shepherd's or Gillilan's version, or provide another perspective on what actually happened. Also absent is any testimony from Shepherd's daughter, who may be able to confirm that Shepherd was injured, and that she took Shepherd to the emergency room as a result of those injuries.[1]

## II. Legal Discussion

Shepherd's claim against Gillilan for excessive force in violation of the Fourth Amendment is brought under 42 U.S.C. § 1983. Further, and even though the Complaint is in one count, it mentions in passing Smith County and Sheriff Hopper, and their purported failure to train or

---

[1] In her response, Shepherd claims to have attached a Declaration from Robin Moore at Docket Number 39-3. Perhaps Moore is Shepherd's daughter, but the filing at that entry is the declaration from Gillian.

4

supervise Gillilan. Defendants move for summary judgment on all claims. It also argues Shepherd's Complaint is untimely.

**A. Statute of Limitations**

This is the second case that Shepherd has brought against Gililan based upon the same set of facts. The prior case, Shepherd v. Gillilan, Case No. 2:18-cv-00023, was dismissed without prejudice on January 5, 2019, because Shepherd's counsel failed to comply with this Court's orders. In recommending that dismissal, then-Magistrate Judge Joe E. Brown stated in a footnote that "[a]lthough the dismissal may be without prejudice, given the fact that the complaint was literally filed on the last day of the statute of limitations, it is likely that any attempt to reinstate the case would be barred by the statute of limitations." (Shepherd v. Gillilan, Case No. 2:18-cv-00023, Doc. No. 20 at 6 n.1). This Court accepted the recommendation without commenting on the statute of limitations issues.

"The statute of limitations applicable to a § 1983 action is the state statute of limitations applicable to personal injury actions under the law of the state in which the § 1983 claim arises." Eidson v. Tenn. Dep't of Children's Servs., 510 F.3d 631, 634 (6th Cir. 2007). Further, Tennessee law also governs the "closely related questions of tolling and application[.]" Harris v. United States, 422 F.3d 322, 331 (6th Cir. 2005) (citation omitted).

The limitations period for personal injury claims in Tennessee is one year. Tenn. Code Ann. § 28-3-104(a). Because the force about which Shepherd complains occurred on February 22, 2017, and the instant case was not filed until March 12, 2019, Defendants argue that Shepherd's complaint is untimely. Shepherd assert otherwise based on Tennessee's savings statute.

So far as relevant, Tennessee's savings statute provides:

5

> If the action is commenced within the time limited by a rule or statute of limitation, but the judgment or decree is rendered against the plaintiff upon any ground not concluding the plaintiff's right of action . . . the plaintiff . . . may commence a new action within one (1) year . . . .

Tenn. Code Ann. 28-1-105(a). The Tennessee Court of Appeals has described the intent, purpose, and application of the statute as follows:

> Because Tennessee law favors the resolution of disputes on their merits, the savings statute must be given a broad and liberal construction. The purpose behind the savings statute is to aid the courts in administering the law fairly between litigants without binding them to minor and technical mistakes made by their counsel in interpreting the complexities of our laws of procedure. To determine whether the savings statute is applicable, the court must ascertain whether the defendant had notice: Notice to the party affected is the true test of the statute's applicability. . . . The important consideration is that, by invoking judicial aid, a litigant gives timely notice to his adversary of a present purpose to maintain his rights before the courts. Thus, the savings statute is only applicable when the original complaint and the new complaint allege substantially the same cause of action, which includes identity of the parties.

Foster v. St. Joseph Hosp., 158 S.W.3d 418, 422 (Tenn. Ct. App. 2004) (internal citations and quotation marks omitted).

Defendants do not dispute that this action was filed within one year of the dismissal of the prior action, and they concede that this case is identical to the first. Nevertheless, they argue that the savings statute should not apply because Tennessee courts have found the savings statute inapplicable to certain statutory causes of actions. Most notable in this regard is the decision of the Tennessee Supreme Court in Lynn v. City of Jackson, 63 S.W.3d 332, 333 (Tenn. 2001), which "reaffirm[ed] the well-established rule of Tennessee law that general saving statutes do not apply to extend the time for filing an action under the Tennessee Governmental Tort Liability Act ['TGTLA' or 'GTLA']."

6

Notwithstanding Lynn, Defendants' statute of limitations argument fails because the Sixth Circuit has specifically held – in circumstance similar to those here – that a Section 1983 action dismissed for failure to prosecute can be resurrected if re-filed in accordance with the time limits in Tennessee's savings statute. Moore v. Fields, 464 F.2d 549, 550 (6th Cir. 1972). This is true even though Moore preceded Lynn by decades.

Lynn's focus was on the legislative intent in enacting the TGTLA. The TGTLA is a limited, statutory exception to the "doctrine of sovereign immunity [that] has been embraced in Tennessee for over a century and precludes lawsuits against governmental entities unless the governmental entity has consented to be sued." Lynn, 63 F.3d at 337. "Accordingly, Tennessee law views the twelve-month limitation period for bringing an action under the GTLA as a condition precedent which must be met" and "[i]f suit is not filed within the statutory period, both the right and the remedy is extinguished." Id. The same cannot be said about Section 1983. See, Eady v. Young, No. 4:12-CV-28, 2013 WL 11328159, at *3 (E.D. Tenn. Feb. 6, 2013) (applying Moore post-Lynn, but finding the complaint untimely for other reasons); Oliver v. Shelby Cty. Gov't, No. 05-2748, 2006 WL 8435886, at *5 (W.D. Tenn. Dec. 14, 2006) (same).

Moreover, Shepherd's only viable claim is her excessive force claim against Gillilan in his individual capacity. "The GTLA immunizes a governmental employee when the governmental entity is liable; however, the immunity afforded governmental entities does not extend to the employee."
Hughes v. Metro. Gov't of Nashville & Davidson Cty., 340 S.W.3d 352, 359 n.3 (Tenn. 2011). "Therefore, the TGTLA-specific rule excluding the Tennessee savings statute, Tenn.Code. Ann. § 28-1-105, does not apply to . . . common law [or Section 1983] claims against government

7

employees in their individual capacities." Baker v. Snyder, No. 1:05 CV 152, 2006 WL 2645163, at *10 (E.D. Tenn. Sept. 14, 2006).

Summary judgment will not be granted on the grounds that the statute of limitations has ran.

## B. Excessive Force

Gillilan has moved for summary judgment on Shepherd's excessive force claim by arguing that the force he used was reasonable and therefore he is entitled to qualified immunity. Factual issues preclude summary judgment on this claim.

The Sixth Circuit has succinctly summarized the proper analysis for excessive force claims as follows:

> The police must act reasonably when seizing a person. See U.S. CONST. amends. IV & XIV. Using "excessive force" during an arrest is unreasonable and thus violates the Fourth Amendment. Graham v. Connor, 490 U.S. 386, 394–95, 109 S. Ct. 1865, 104 L. Ed.2d 443 (1989). But a police officer who uses excessive force can be held personally liable only if the use of force was clearly established as excessive at the time of the arrest. Pearson v. Callahan, 555 U.S. 223, 231, 129 S. Ct. 808, 172 L. Ed.2d 565 (2009). That means existing case law must clearly and specifically hold that what the officer did—under the circumstances the officer did it—violated the Constitution. We therefore must determine (A) whether the officers' conduct violated the Constitution; and (B) if so, whether it violated law that has been clearly established.

Rudlaff v. Gillispie, 791 F.3d 638, 641 (6th Cir. 2015).

This "doctrinal framework . . . is well settled." Smith v. City of Wyoming, 821 F.3d 697, 717 (6th Cir. 2016). It requires a court "to determine whether the degree of force exerted during a seizure – here, an arrest – was excessive under an 'objective reasonableness' standard." Id. (quoting Morrison v. Bd. of Trs. of Green Twp., 583 F.3d 394, 401 (6th Cir.2009)). "This assessment involves 'balancing the consequences to the individual against the government's interests in effecting the seizure,'" and "requires 'a fact-specific inquiry based on the totality of the

8

circumstances.'" Id. (citations omitted). "The officers' objective reasonableness is gauged on what a reasonable officer would have done, given the knowledge he had at the time." Id.

"As evident from this formulation, a primary consideration in the inquiry is whether the law enforcement officer had a legitimate government interest, i.e. justification, to exert force." Morrison, 583 F.3d at 404.; see also Shreve v. Franklin Cty., 743 F.3d 126, 134 (6th Cir. 2014) (noting that an excessive force claim under the Fourth Amendment "operates on a sliding scale" of reasonableness). This presents an initial question of fact in this case: was any force even necessary or appropriate? If Shepherd is to be believed, no force should have been used because she had retreated into her home and was pulled from it by Gillilan after he kicked open the door. On the other hand, if Gillilan is credited, he used reasonable force to subdued an individual that had assaulted him.

Additionally there is a dispute about the actual force used. To be sure, "[w]hen making an arrest or investigatory stop, the government has 'the right to use some degree of physical coercion or threat thereof to effect it.'" Kostrzewa v. City of Troy, 247 F.3d 633, 639 (6th Cir. 2001) (quoting Graham, 490 U.S. at 394)). This is because "[l]aw enforcement officers are inevitably required to make difficult, split-second decisions regarding the amount of force needed in a particular situation, and '[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment.'" Id.

Nevertheless, "cases in this circuit clearly establish the right of [persons] who pose no safety risk to the police to be free from gratuitous violence during arrest." Baker v. City of Hamilton, 471 F.3d 601, 608 (6th Cir.2006) (citing Shreve v. Jessamine Cty. Fiscal Court, 453 F.3d 681, 687 (6th Cir. 2006)). Thus, for example, in Miller v. Sanilac Cty., 606 F.3d 240, 252–53 (6th Cir. 2010)

9

summary judgment was unwarranted where plaintiff alleged that a deputy "spun him around, slammed him against his vehicle, and kicked his feet apart," and that remained so even though plaintiff "admit[ed] that he was not 'hurt' by this conduct." Similarly, summary judgment was inappropriate in Minchella v. Bauman, 72 F. App'x 405, 406 (6th Cir. 2003) where the plaintiff claimed she was grabbed, her arm was twisted, and she was thrown against a police car during the course of an arrest where it was disputed whether she had even done anything wrong. Likewise in this case summary judgment is unwarranted because the true facts of what occurred are unknown, and Shepherd's version of events must be accepted as true for purposes of summary judgment. Rorrer v. City of Stow, 743 F.3d 1025, 1038 (6th Cir. 2014); Muhammad v. Close, 379 F.3d 413, 416 (6th Cir.2004).

Gillilan's reliance on a number of cases from the Eleventh Circuit that stand for the proposition that there must be more than minimal force *and* some injury to defeat qualified immunity is misplaced. See e.g. Nolin v. Isbell, 207 F.3d 1253, 1257 (11th Cir. 2000); Jones v. City of Dothan, 124 F.3d 1456 (11th Cir. 1997). This is because the Sixth Circuit has observed: "We have long held that a plaintiff may 'allege use of excessive force even where the physical contact between the parties did not leave excessive marks or cause extensive physical damage.'" Miller, 606 F.3d at 253 (quoting Ingram v. City of Columbus, 185 F.3d 579, 597 (6th Cir.1999)). "We look instead to whether 'gratuitous violence' has been inflicted." Id. (quoting Pigram, 199 F. App'x 509, 513 (6th Cir.2006); see also Baskin v. Smith, 50 F. App'x 731, 737 (6th Cir. 2002) (collecting cases) (noting that "[a] factor that is not crucial to an analysis of a claim for excessive force in violation of the Fourth Amendment is the extent of the injury inflicted," whereas "this factor is relevant to a claim brought under the Eighth Amendment for cruel and unusual punishment"). If Shepherd is

10

believed, Gillilan engaged in gratuitous violence when he yanked her out of the house and threw her against the wall.[2] A jury must decide this issue and, accordingly summary judgment will be denied on Shepherd's excessive force claim against Gillilan.

## C. Failure to Train or Supervise

To the extent Shepherd sues Smith County and Sheriff Hopper in his official capacity, these claims merit little discussion. To succeed against Smith County, Shepherd must prove "(1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist., 455 F.3d 690, 700 (6th Cir. 2006). As for Sheriff Hopper, "a supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." Peatross v. City of Memphis, 818 F.3d 233, 242 (6th Cir. 2016). This "mean[s]'at a minimum,' the plaintiff must show that the defendant 'at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.'" Id. (quoting Shehee v. Luttrell, 199 F.3d 295, 299 (6th Cir.1999)).

General and conclusory allegations are insufficient to support failure to supervise or train claim, yet that is all the Complaint contains. Moniz v. Cox, 512 F. App'x 495, 499 (6th Cir. 2013). Pleadings aside, to survive summary judgment, a plaintiff must come forward with some evidence

---

[2] In the response brief, Defendants focus on Gillilan's handcuffing of Shepherd. The Court does not understand this to be a part of the excessive force claim. To the extent that it is, the Court agrees such a claim fails because there is no evidence Shepherd complained about the handcuffs being too tight, or that Gillilan ignored the complaint, both of which are necessary elements in the Sixth Circuit. Baynes v. Cleland, 799 F.3d 600, 608 (6th Cir. 2015)

11

suggesting notice of prior misconduct and deliberate indifference. <u>Marcilis v. Twp. of Redford</u>, 693 F.3d 589, 605 (6th Cir. 2012); <u>Plinton v. Cnty. of Summit</u>, 540 F.3d 459, 464 (6th Cir.2008). Shepherd has not even attempted to make that showing. In fact, Sheriff Hopper, and Smith County are not even mentioned in Shepherd's response brief. Therefore, summary judgment is warranted on Shepherd's claims against Smith County and Sheriff Hopper.

## III. Conclusion

On the basis of the foregoing, Defendants' Motion for Summary Judgment (Doc. No. 26) will be granted in part and denied in part. The motion will be granted with respect to Shepherd's claims against Sheriff Hopper and Smith County, Tennessee. The Motion will be denied with respect to Shepherd's claim against Gillilan for excessive force.

An appropriate Order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE